**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

IN RE:  REAL PROPERTY LOCATED     )           No. _____
AT 14 GOLF VIEW DRIVE, VOORHEES,    )
NEW JERSEY                              )
_____

**UNITED STATES' EX PARTE APPLICATION TO ENFORCE AND REGISTER
A FOREIGN RESTRAINING ORDER PURSUANT TO 28 U.S.C. § 2467(d)(3)
AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Applicant United States of America, by and through its undersigned attorneys,

respectfully submits this application for entry of an order pursuant to 28 U.S.C. § 2467(d)(3), as

amended by the Preserving Foreign Criminal Assets for Forfeiture Act of 2010.  The application

is seeking to enforce a foreign restraining order issued by the High Court of New Zealand,

Auckland Registry, in New Zealand, to restrain assets in the United States in order to preserve

the availability of these assets until such time as New Zealand presents a final forfeiture

judgment or confiscation order for execution in this Court in connection with the criminal

prosecution of Allen Bryan Cho, also known as Hyung Jun Cho, and his co-conspirators.

**I.**      **JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467.

Venue is proper in this Court pursuant to § 2467(c)(2)(B), which provides, in relevant part, that

"venue shall lie in the district court for the District of Columbia or in any other district in which

the defendant or the property . . . may be found."

**II.**      **APPLICATION**

The United States is seeking an order pursuant to § 2467(d)(3) to preserve assets

identified by New Zealand in its June 21, 2012, restraining order and to enforce that order.  On

1

June 22, 2012, the United States Department of Justice, Asset Forfeiture and Money Laundering

Section ("AFMLS"), received a mutual legal assistance request from New Zealand seeking

enforcement of this order for the purpose of securing U.S.-based assets believed to represent

proceeds of the criminal activity of Allen Bryan Cho ("Cho"), also known as Hung Jun Cho, and

others for eventual confiscation (forfeiture) by New Zealand.  The United States, with the

appropriate certification of the Assistant Attorney General annexed hereto as Exhibit A, applies

to this Court to issue a restraining order giving effect to the New Zealand court's provisional

measure, thus preserving assets subject to forfeiture in New Zealand from dissipation here in the

United States.

The following specific asset is subject to the June 21, 2012, New Zealand restraining

order, attached as Exhibit B, issued by Justice Patricia Courtney:  real property located at 14 Golf

View Drive, Voorhees, New Jersey, described as block 139, lot 47, district 0434, in the tax map

of the County of Camden, New Jersey (hereinafter "the Subject Property"). [1]  Cho's parents,

Kang Won Cho ("Mr. Cho") and Hyun Ae Cho ("Mrs. Cho"), recorded the deed to this property

in the County of Camden on August 4, 2011.

The United States is seeking the restraint of the above-listed asset based upon the

involvement of the asset, and of the New Zealand national that beneficially controls it, in a

narcotics, organized crime, and money laundering scheme that is being investigated and

prosecuted by the New Zealand Police (the "NZP") and the Crown Law Office of New Zealand.

---

[1] The New Zealand restraining order describes the Subject Property as "14 Golfview Court, Voorhees Township, County of Camden, State of New Jersey, United States of America (also known as lot 47 in block 139 on the tax map of the Township of Voorhees)."  Public records of the County of Camden reveal that Cho's parents purchased the real property at 14 *Golf View Drive*, Voorhees, New Jersey, which is described as lot 47, block 139, District 0434, in the Township of Voorhees in the County of Camden's records.  The document transferring title incorrectly referred to the same property as "14 Golfview Court" in the Grantee Section, but clearly is the same property listed in the tax records as "14 Golf View Drive."  *See* Exhibit C, County Tax Assessor's Online Record.

III.    **FACTUAL BACKGROUND**

On June 22, 2012, the Deputy Solicitor-General of New Zealand, on behalf of the
Attorney-General of New Zealand, submitted a supplemental Mutual Legal Assistance Request
("the Request") in connection with the prosecution of individuals involved in a narcotics
trafficking, organized crime, and money laundering scheme masterminded by Cho.  The Request
was made pursuant to two United Nations treaties which obligate the United States and New
Zealand to provide mutual legal assistance in investigations, prosecutions, and other proceedings
related to narcotics trafficking and transnational organized crime, including confiscation and the
immobilization of assets.[2]  The Request seeks enforcement of a June 21, 2012, order issued by
the High Court of New Zealand, Auckland Registry, restraining the Subject Property.  According
to the Request, the Subject Property was purchased by Cho's parents with the proceeds of Cho's
narcotics trafficking and money laundering.

During execution of a search warrant at Cho's Auckland apartment, the NZP discovered
in plain view a large zip-lock bag of blue pills, believed at the time to be ecstasy due to their
imprint with cartoon and pop culture logos.  The search ultimately revealed approximately 7,000
pills; $459,791 NZD (approximately $371,700 USD) in bundles of low denomination notes;
"tick notes" detailing individuals' names and numbers secured to the cash with rubber bands
(which the NZP's handwriting analysis revealed were mostly written by Cho); a cash counter; a
radio scanner for intercepting police communications; cell phone jamming devices; "burner" cell
phones, SIM cards, and other electronics; as well as a large quantity of prescription drugs.

---

[2] *See* United Nations Convention Against Transnational Organised Crime, Nov. 15, 2000, arts. 12–13, 2225
U.N.T.S. 209 (ratified on November 3, 2005, by the United States and July 19, 2002, by New Zealand; United
Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, Dec. 20, 1988, arts. 5
and 7, S. Treaty Doc. No. 101-4, 1582 U.N.T.S. 165 (ratified on February 20, 1990, by the United States and
December 16, 1998, by New Zealand).

Upon testing, the blue pills were identified as 4-MEC (4-Methyl-N-Ethylcathinone), a substance that is illegal in New Zealand and is considered by the U.S. Drug Enforcement Administration ("DEA") to be an "analogue"—a designer substitute—for Methcathinone, which is a Schedule I narcotic regulated pursuant to the Controlled Substances Act, Title 21, of the United States Code.   This search lead the NZP to initiate an investigation into Cho on a potentially broader drug and money laundering conspiracy responsible for the wholesale supply of 4-MEC, ecstasy, methamphetamine, and cocaine in and around bars in Auckland.

Text messages between Cho and his associates regarding drug and financial transactions show that between January and March 2011, Cho's associates made multiple cash and bank check deposits of drug proceeds into a Westpac Bank checking account in New Zealand belonging to Cho's parents, including funds later transferred to the United States.  The NZP obtained several text messages sent and received in March 2011 between Cho and his associates that referred to bank transfers and declining exchange rates, which indicate that money was routinely being transferred into the Westpac Bank account for the purpose of transferring the money to an unnamed offshore destination.  There are also indications that Cho's father was aware, even anxious, about his son's financial activity on the Westpac Bank account.  One particular intercepted text, from Cho to an associate on March 10, 2011, states:  "Make sure you get it all done today bro, cash, bank transfer, bank cheque, anuthing [sic] . . . Old man stressing me out, he worried.  LOL."

On March 22, 2011, Cho was recorded on closed-circuit television carrying $102,000 NZD in cash which he deposited into an account in his father's name and which was later transferred into his parents' account at Westpac Bank.  On March 15 and 23, 2011, $204,415 NZD ($150,000 USD) and $117,374 NZD ($86,000 USD), respectively, were wired from the

Westpac Bank account to account number XXXXXX8907, held in the name of Cho's parents, at TD Bank in Lewiston, Maine.  On March 22, 2011, an additional $58,000 USD believed to be illicit narcotics proceeds was wired from Mr. Cho's account at Korean Exchange Bank in Seoul, South Korea, into TD Bank account number XXXXXX8907.  Finally, between March 18 and April 4, 2011, amounts almost mirroring the sums wired into the account from abroad were transferred to a second account at TD Bank, money market account  number XXXXXX9640, also held in the names of Mr. and Mrs. Cho.  No withdrawals for business or living expenses were made from this account before Cho was arrested.

On November 10, 2011, the New Zealand High Court, Auckland Registry, issued an order restraining this destination account number XXXXXX9640 at TD Bank.  However, the investigation revealed that this account was substantially diminished prior to the issuance of the New Zealand restraining order.  On July 11, 2011, Mr. Cho obtained a cashier's check in the amount of $301,000 USD, withdrawn from the destination account number XXXXXX9640.  Mr. Cho then used that cashier's check to purchase the Subject Property without mortgage for $300,000 USD pursuant to a deed of sale entered into on July 8, 2011.  The deed, in the names of Cho's parents, Mr. and Mrs. Cho as husband and wife, was recorded on August 4, 2011.

On November 16, 2011, New Zealand authorities arrested Cho and several of his co-conspirators in connection with the investigation.  More specifically, Cho has been charged with supplying a class A controlled drug, supplying a class B controlled drug, selling a class C controlled drug, possessing a class C controlled drug for the purpose of sale, and offering to sell a class C controlled drug, in violation of §§ 6(1)(c), 6(1)(e), and 2 of the Misuse of Drugs Act; participating in an organized criminal group, in violation of § 98A of the Crimes Act of 1961; and money laundering, in violation of § 243(2) of the Crimes Act of 1961.  Cho has appeared in

court, has been informed of the charges against him, and is currently released on bail.

## IV.   LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), United States federal courts are authorized to issue orders to preserve property during the pendency of foreign forfeiture proceedings until receipt of an enforceable final foreign forfeiture judgment.  *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28 U.S.C. § 2467(d)(3)). [3]  In issuing such an order, a U.S. court may either rely on information from an affidavit "setting forth a reasonable basis to believe property to be restrained will be named in a judgment of forfeiture" or it may register and enforce a foreign order.  28 U.S.C. § 2467(d)(3)(B).  Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property *subject to civil or criminal forfeiture under foreign law*, the Government may apply for and the court may issue a restraining order at *any time before* or after *the initiation of forfeiture proceedings by a foreign nation*.

§ 2467(d)(3)(A) (emphasis added).

Section 2467(d)(3)(A) also requires that the U.S. restraining order be issued "consistent with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process protections for a restraining order under section 983(j) of title 18."  § 2467(d)(3)(A).  Consequently, a U.S. court may deny enforcement of a foreign restraining order if it finds that the order was obtained without due process, issued by an authority that lacked subject matter jurisdiction, or was obtained by fraud.  In addition, the cross-references to 18 U.S.C. § 983(j) do

---

[3]  On December 22, 2010, through the Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 111-342, 124 Stat. 3607 (2010), Congress amended 28 U.S.C. § 2467(d)(3) partly in response to case law limiting courts' authority under the prior iteration of the statute to freezing assets only after a foreign court had entered a final forfeiture judgment.  *See, e.g.*, *In re Any and All Funds or Other Assets in Brown Bros. Harriman & Co. Account # 8870792 in the Name of Tiger Eye Inv. Ltd.*, 613 F.3d 1122 (D.C. Cir. 2010).  As amended in late 2010, the statute now clearly authorizes courts to issue a restraining order "at any time before or after the initiation of forfeiture proceedings by a foreign nation."  28 U.S.C. § 2467(d)(3)(A)(i) (2006 & 2012 Supp.); *see also In re Restraint of All Assets Contained or Formerly Contained in Certain Inv. Accounts at UBS Fin. Servs., Inc.* ("*Restraint of All Assets at UBS*"), ___ F. Supp. 2d ___, 2012 WL 1744463, at *3 & n.7 (D.D.C. May 17, 2012).

not require that forfeiture proceedings, civil or criminal, be filed in the U.S., but rather refer to actions and proceedings initiated in the foreign country.  As a result, consistent with analogous procedures in a domestic civil or criminal forfeiture proceeding under § 983(j), U.S. courts may issue an order fashioning the appropriate relief to preserve property during the pendency of equivalent foreign proceedings.  *See In re Restraint of All Assets Contained or Formerly Contained in Certain Inv. Accounts at UBS Fin. Servs., Inc.* ("*Restraint of All Assets at UBS*"), ___ F. Supp. 2d ___, 2012 WL 1744463, at *8 (D.D.C. May 17, 2012); *In re Enforcement of Restraining order by High Court, First Instance, Hong Kong* ("*Luan*"), Misc. No. 11-00208(GK), at 3–4 (D.D.C. Apr. 4, 2012).

A prerequisite for the enforcement of a foreign restraining order is certification by the Attorney General that enforcement of the order is in the "interest of justice."  § 2467(b)(2).  On March 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General in charge of the Criminal Division of the Department of Justice.

## V.     DISCUSSION

A.     The New Zealand Restraining Order Meets the Requirements for Enforcement Under  § 2467(d)(3)(A).

Section 2467(d)(3) sets forth the following criteria relevant in considering a request for enforcement of a foreign restraining order: (1) whether the United States and the foreign government issuing the order are or will become parties to a formal international agreement providing for mutual forfeiture assistance; (2) whether the acts underlying the violation of foreign law giving rise to forfeiture would give rise to forfeiture under federal law if such acts were committed in the United States; (3) whether the Attorney General has determined it would be in the interest of justice to certify the order for enforcement; (4) whether the foreign order was

issued consistent with due process; (5) whether the foreign authority had subject matter jurisdiction to issue the restraint; and (6) whether there is any reason to believe the foreign order was obtained by fraud.[4]  The certified New Zealand restraining order meets the requirements for registration and enforcement pursuant to § 2467(d)(3) and entry of the U.S. restraining order is necessary to preserve the property for eventual forfeiture in New Zealand.

1.  Agreement on Forfeiture Assistance

First, although the United States does not have a bilateral mutual legal assistance treaty with New Zealand, both nations are parties to the 1988 United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances ("1988 Vienna Convention"), which obligates member states to provide mutual legal assistance in investigations, prosecutions, and other proceedings, including confiscation related to narcotics offenses.[5]  Article 7 of the 1988 Vienna Convention contains a non-exhaustive list of legal assistance available under the Convention regarding investigations, prosecutions, and judicial proceedings relating to narcotics trafficking.  Requests for assistance concerning the immobilization of assets and assistance in forfeiture proceedings are specifically envisioned.  *See* United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances ("1988 Vienna Convention"), Dec. 20, 1988, art. 5(4), S. Treaty Doc. No. 101-4, 1582 U.N.T.S. 165 (ratified on February 20, 1990, by the United States and December 16, 1998, by New Zealand).  Article 5(4)(b) of the 1988 Vienna

---

[4] It is the legal position of the United States that it need not affirmatively prove that the foreign order was issued consistent with due process, that the foreign authority had subject matter jurisdiction to issue the restraint, or that the foreign order was not obtained by fraud, before an order can issue from this Court, but rather that an affected person or entity may appear in this parallel proceeding and challenge the U.S. restraining order by making an affirmative evidentiary showing that the foreign order or process has one of these defects.

[5] *See* United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, Dec. 20, 1988, arts. 5 and 7, S. Treaty Doc. No. 101-4, 1582 U.N.T.S. 165 (ratified on February 20, 1990, by the United States and December 16, 1998, by New Zealand).  New Zealand and the United States are also parties to the United Nations Convention Against Transnational Organised Crime, Nov. 15, 2000, S. Treaty Doc. No. 108-16, 2225 U.N.T.S. 209 (ratified on November 3, 2005, by the United States and July 19, 2002, by New Zealand), article 13 of which provides for mutual legal assistance for the purpose of confiscation (forfeiture).

Convention states:

> Following a request made pursuant to this article by another Party having jurisdiction over an offence established in accordance with article 3, paragraph 1, the requested Party shall take measures to identify, trace, and freeze or seize proceeds, property, instrumentalities or any other things referred to in paragraph l of this article for the purpose of eventual confiscation to be ordered either by the requesting Party or, pursuant to a request under subparagraph a) of this paragraph, by the requested Party.

*Id.* art. 5(4)(b).  Accordingly, the first criterion for enforcement is satisfied because the United States and New Zealand are parties to agreements authorizing forfeiture assistance.

2.  Dual Forfeitability

Second, the acts underlying the violation of New Zealand law which give rise to the June 21st restraining order are forfeitable offenses under New Zealand law and would give rise to forfeiture under federal law if they were committed in the United States.

The New Zealand restraining order is based upon Cho's alleged trafficking in controlled substances, money laundering, and participation in a criminal organization, including violations of:  §§ 6(1)(c) and 6(2) of the Misuse of Drugs Act (supplying Class A, B, and C controlled drugs and possessing the same); § 98A of the Crimes Act of 1961 (participating in an organized criminal group); and § 243(2) of Crimes Act of 1961 (money laundering).  Section 2(1) of New Zealand's Criminal Proceeds (Recovery) Act of 2009 provides for forfeiture of assets obtained by a criminal offender.  These offenses constitute foreign narcotics offenses for which forfeiture is authorized pursuant to 18 U.S.C. § 981(a)(1)(B), which provides for forfeiture of proceeds of foreign offenses enumerated in 18 U.S.C. § 1956(c)(7)(B), including "the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act)."  *See* 18 U.S.C. § 1956(c)(7)(B)(i).

The New Zealand offense conduct would also satisfy a dual forfeitability standard, as

proceeds of a drug offense are subject to forfeiture pursuant to 21 U.S.C. §§ 853 and 881 (proceeds of certain drug offenses), while domestic specified unlawful activities include, non-exclusively:  21 U.S.C. § 841 (distribution of controlled substances); § 846 (drug conspiracy); and § 848 (continuing criminal enterprise).  Such offenses also give rise to proceeds and money laundering forfeiture under 18 U.S.C. §§ 981(a)(1)( A) and (C).  Under U.S. federal law, money laundering to promote unlawful activity, to conceal the source, origin, nature, ownership, or control of criminal proceeds, or with the intent to evade reporting requirements or evade taxes, is a crime for which forfeiture is available.  *See* 18 U.S.C. § 1956(a) (criminalizing money laundering); § 981(a)(1)(A) (establishing civil forfeiture for property involved in, or traceable to, a money laundering transaction); § 981(a)(1)(C) (establishing civil forfeiture for property constituting criminal proceeds or deriving from proceeds); 18 U.S.C. § 982(a)(1) (establishing criminal forfeiture of property involved in or traceable to a violation of § 1956).

### 3.   Attorney General Certification

Third, the New Zealand restraining order was certified by the Assistant Attorney General on June 27, 2012.  The Assistant Attorney General, in certifying foreign restraining order, acknowledges that he has considered the facts of the case, the foreign law, the applicable U.S. law, and the circumstances of the judiciary from whence the order came, and has concluded that enforcement of the foreign restraining order under § 2467 is "in the interest of justice."  *See* Exhibit A, AAG Certification.  The Attorney General's Order of March 9, 2006, delegates authority to sign § 2467 certifications to the Assistant Attorney General.  *See* Exhibit D, Order No. 2820-2006.  The Assistant Attorney General's determination is a statutory requirement and is not subject to review.  *See* 28 U.S.C. § 2467(d)(3)(B)(ii) and § 2467(b)(2).  Thus, the third criterion for enforcement is met.

4.   Due Process

Fourth, the New Zealand order was issued consistent with due process.  The NZP and Crown Law Office investigative operations appear to have been conducted in accordance with New Zealand criminal procedure, including via court-authorized wiretaps and search warrants. As mentioned previously, the New Zealand restraining order is a provisional measure which seeks to preserve property and assets for later confiscation.  Because Cho and his parents have dissipated assets in the past, New Zealand originally sought and obtained an *ex parte*, "without notice," restraining order against the Subject Property.  According to article 22(1) of the Criminal Proceeds (Recovery) Act of 2009, the High Court of New Zealand  may only issue such a "without notice" restraining order "if the court is satisfied that there is a risk of the proposed restrained property being destroyed, disposed of, altered, or concealed if notice were given to the person or those persons."  On June 21, 2012, Justice Courtney made such a finding and issued a "without notice" restraining order against the property.  That "without notice" order will expire seven days from issuance—June 28, 2012—unless an application for an *inter partes*, "with notice," restraining order is filed before that date.  *See* Criminal Proceeds (Recovery) Act of 2009, art. 39(2).

The Crown Law Office filed an application for a "with notice" restraint of the property on June 27, 2012, and thus will give notice of the restraining order to Cho and any other interested parties, including his parents in the near future.  *See* Exhibit E, On Notice Application for Restraining Order.  Following notice by the New Zealand authorities, such interested persons will have the opportunity to object to the provisional measure by challenging the application for a "with notice" restraining order in the time allotted by New Zealand law, which will not have the immediate effect of dissolving the restraining order.  Accordingly, because New Zealand

must now give notice to Cho and his parents, the urgency of enforcing the New Zealand restraining order before they can dissipate or encumber the asset is evident.

5.   Subject Matter Jurisdiction

Fifth, the foreign authority had subject matter jurisdiction to issue the restraining order. Under the Criminal Proceeds (Recovery) Act of 2009, article 20, the High Court of New Zealand, Auckland Registry, is the court of competent jurisdiction for this action within New Zealand and the appropriate statutory procedures appear to have been followed.

6.   Absence of Fraud

Finally, the United States is not aware of any reason to believe that the June 21, 2012, order was obtained by fraud.  As such, ample justification exists for the registration and enforcement of the New Zealand order in the United States.

B.   This Court Should Act to Enforce the New Zealand Restraining Order by Executing a Restraining Order in a Manner Consistent with 18 U.S.C. § 983(j)(1).

Section 2467(d)(3)(A) authorizes the district court to enter a restraining order to preserve the availability of property subject to either civil or criminal forfeiture proceedings under foreign law.  The statute makes clear that § 983(j) is not to be given literal application, but rather the cross-references to § 983(j) refer to "the applicable foreign criminal or forfeiture proceedings" in the context of enforcing a foreign restraining order.  28 U.S.C. § 2467(d)(3)(A)(ii)(II)(aa); *see also Luan*, Misc. No. 11-00208(GK), at 3 ("[T]he statutes do not require that the foreign country application follow any procedures or pleading requirements applicable to United States civil forfeiture filings as mandated under United States law.").  The June 21, 2012, New Zealand restraining order issued by a court of competent jurisdiction marks the intention of the Government of New Zealand to seek forfeiture, as permitted by article 2(1) of the Crime Proceeds (Recovery) Act of 2009, in connection with the criminal prosecution of Cho and his co-

conspirators.  To guarantee the effectiveness of future forfeiture by the Government of New

Zealand, the High Court may issue provisional measures, such as this restraining order, while the

case is prosecuted to prevent the dissipation of the proceeds of unlawful activity "if the court is

satisfied that it has reasonable grounds to believe that any property is tainted property."

Consequently, by applying the language of § 2467(d)(3)(A) and structures under

§ 983(j)(1)(A), the New Zealand restraining order—intended to safeguard assets for forfeiture—

warrants this Court to issue an order to "preserve the availability of property . . . subject to

forfeiture" for the duration of the foreign proceedings.  *See* § 2467(d)(3)(A) (specifying that the

district court may enter a restraining order at *any time before* or after the initiation of foreign

forfeiture proceedings) (emphasis added); *see also Luan*, Misc. No. 11-00208(GK), at 3–4

(holding that § 983(j)(1)(A) provides the applicable procedure for a "valid post-indictment and

pre-trial restraining order" under foreign law).   As such, this Court should recognize the New

Zealand order and enforce it according to its terms.  These terms include instructions that the

Subject Property "is not to be disposed of, or dealt with, other than is provided for in this

restraining order and is to be under the Official Assignee's custody and control."  *See* Exhibit B,

New Zealand Restraining Order.  If this Court enforces and registers the June 21, 2012,

restraining order, AFMLS will work with the local U.S. Attorney's Office in New Jersey to

record the pertinent *lis pendens* in the County of Camden.

## VI.  CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court

enforce the attached New Zealand restraining order, consistent with U.S. treaty obligations under

the 1988 Vienna Convention and the United Nations Convention Against Transnational

Organised Crime, by entering the attached proposed order against the captioned property

pursuant to this Court's authority under 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii), and 18 U.S.C.

§ 983(j)(1)(A).  The United States will promptly provide those affected individuals and entities

with notice of this proceeding and a copy of the Order, and will request, through the appropriate

legal assistance channels, that those individuals and entities located outside of the United States

who have an apparent interest in the property be provided with notice and a copy of this Court's

Order.

Respectfully submitted,

JENNIFER SHASKY CALVERY
Chief

By: _____/s/_____
A.J. DE KLUIVER (LA BAR #20163)
Assistant Deputy Chief
KATHARINE A. WAGNER (NY BAR #4798245)
Trial Attorney
Asset Forfeiture and Money
   Laundering Section
U.S. Department of Justice
1400 New York Avenue NW
Washington, D.C.  20005

Telephone:     (202) 514-1263
Fax:              (202) 514-5522

Attorneys for Applicant
UNITED STATES OF AMERICA